IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| DAVENPORT CHESTER, LLC, | ) | Case No. 3:15-cv-00070-SMR-SBJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABRAMS PROPERTIES, INC., and | ) | ORDER GRANTING IN PART AND |
| SCIENERGY, INC., | ) | DENYING IN PART DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) | |

Before the Court is Defendants Abrams Properties, Inc. and SCIenergy, Inc.'s Motion for

Summary Judgment ("Motion"). [ECF No. 14].[1]  Plaintiff Davenport Chester, LLC resisted the

Motion, [ECF No. 16],[2] and Defendants filed a reply, [ECF No. 21].  Oral argument on the Motion

was held October 23, 2015. [ECF No. 23]. After argument, Plaintiff filed a supplemental brief,

[ECF No. 24], as did Defendants, [ECF No. 25].[3]  Plaintiff filed a reply supplemental brief, [ECF

No. 27], and Defendant responded to this reply, [ECF No. 33].[4]  The matter is fully submitted.  For

the reasons set forth below, the Motion is GRANTED in part.

---

[1] With their Motion, Defendants filed a supporting brief, [ECF No. 14-1], a statement of material facts, [ECF No. 14-2], and an appendix, [ECF No. 14-3].

[2] With its resistance, Plaintiff filed a response to Defendants' statement of material facts, [ECF No. 16-1], its own statement of additional material facts, [ECF No. 16-2], and an appendix, [ECF Nos. 16-3; 16-4].

[3] With its supplemental brief, Plaintiff filed a statement of additional material facts.  [ECF No. 24-1].  Defendants filed a separate reply to these additional facts.  [ECF No. 26].

[4] Defendants moved to strike Plaintiff's reply supplemental brief.  [ECF No. 28]. Magistrate Judge Stephen B. Jackson, Jr. declined to strike Plaintiff's reply supplemental brief, but allowed Defendants to file a responsive brief.  [ECF No. 29].

# I.  BACKGROUND

## A.  *Facts*

The following facts are viewed in the light most favorable to the non-moving party.  On November 16, 1977, Lawrence Kadish as Landlord ("Landlord") and Financial Properties Developers, Inc. as Tenant ("Tenant") entered into an Agreement of Lease ("Lease").  This Lease governs the current dispute.  Plaintiff Davenport Chester, LLC later succeeded to the interests of Lawrence Kadish under the Lease.  In turn, Defendant Abrams Properties, Inc., via name change, succeeded to the interests of Financial Properties Developers, Inc. under the Lease and Defendant SCIenergy, Inc. succeeded to the interests of Abrams under the Lease.  Thus, for purposes of this litigation, "Landlord" refers to Plaintiff Davenport Chester, LLC, and "Tenant" refers to Defendants Abrams Properties, Inc. and SCIenergy, Inc., collectively.

Under the Lease, Tenant served as a sub-landlord to K-Mart Corporation ("K-Mart").  The relationship between Tenant and K-Mart was governed by a separate lease agreement ("Sublease").  The Lease required Tenant to collect rent from K-Mart in trust for the payment of the current month's rent to Landlord.  The Lease also governed Landlord and Tenant's respective responsibilities with regard to the property.

The events giving rise to this litigation occurred in 2012.  K-Mart opted not to renew the Sublease, which was set to expire November 30, 2012, and ceased doing business on Landlord's property sometime in early 2012.  On July 11, 2012, Tenant advised Landlord that it did not wish to renew its leasehold interest and "[u]pon expiration in November 2012, those rights granted will revert back to you and [Tenant] will no longer have an interest in that property."  [ECF No. 16-3 at 85].

Tenant failed to pay May and June 2012 rent when due under the Lease.  In a letter dated June 18, 2012, Landlord advised Tenant of its default and demanded Tenant cure the default within ten days.  Tenant responded within ten days, providing payment for the May 2012 rent and advising the June 2012 rent would follow soon thereafter.  When further payment was not forthcoming, Landlord wrote Tenant and K-Mart on July 13, 2012.  The letter notified Tenant that it was in default for failure to pay June and July 2012 rent and that Landlord intended to end the Lease on September 12, 2012.  The letter also instructed K-Mart to pay its rent directly to Landlord.

Tenant sent checks for June and July 2012 rent in mid-July.  Landlord did not receive another payment until October 24, 2012, when Tenant paid for August, September, and October 2012 rent.  Landlord did not receive payment from Tenant or K-Mart for November 2012 rent.

After Tenant and K-Mart surrendered Landlord's property, Landlord conducted a property condition assessment and environmental site assessment.  Based on the assessments, Landlord concluded Tenant had breached its obligations under the Lease.  On January 25, 2013, Landlord advised Tenant it was in default and demanded 1) $8,766.88 for November 2012 rent, plus interest; 2) $2,160,046.00 for the cost to perform repairs to the property; and 3) an as-of-yet undetermined sum of money to remediate environmental conditions.  On February 13, 2013, Tenant responded, asserting Landlord's sole remedy was termination of the Lease and declining to pay Landlord's demand.

In November 2014, Landlord contracted for sale of the property in "as is" condition. Subsequently, Landlord learned that Tenant had expanded the K-Mart store outside the boundaries of Landlord's property.  Thus, to complete the sale, Landlord was required to acquire the rights to

the encroachment area "to remove any clouds on the title and proceed with its closing." [ECF No. 16 at 12].

### B. Procedural History

Landlord filed the present action in the Iowa District Court for Scott County on June 1, 2015, and Tenant removed the action to this Court based upon diversity jurisdiction. [ECF No. 1]. Landlord pleads three counts: 1) Breach of Contract; 2) Waste under Iowa common law and Iowa Code § 658.1A; and 3) Declaratory Relief. *Id.* at 18–21. Landlord asks for November 2012 rent, the cost of damages/waste to the property, the cost of acquiring the rights to the encroachment area, pre- and post-judgment interest, costs, expenses, and attorney's fees. *Id.* at 21–22. Landlord requests that the Court declare 1) the Lease is valid and binding; 2) Landlord complied with its obligations under the Lease; 3) Landlord has the right to demand Tenant comply with its obligations under the Lease; 4) Tenant breached the Lease; 5) the Lease does not exculpate Tenant from liability; and 6) Tenant is liable for losses Landlord incurred due to Tenant's breach. *Id.* at 20–21.

On August 18, 2015, Tenant filed its Motion for Summary Judgment. Tenant argues section 26.01 of the Lease "unambiguously exculpates Tenant from any personal liability for the performance of its obligations under the Lease." [ECF No. 14 ¶ 6]. Tenant asks that the Court dismiss Landlord's petition. *Id.* at 2. Landlord disputes Tenant's interpretation of the Lease, arguing section 26.01 is "ambiguous [and] repugnant to the general purpose and intent of the [Lease]." [ECF No. 16 at 2]. The parties thus call upon the Court to determine Tenant's liability under the Lease.

## II.  STANDARD OF REVIEW

Familiar standards govern summary judgment motions.  "Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014); Fed. R. Civ. P. 56(a).  "'A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.'"  *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014) (quoting *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011)).  The moving party bears the burden of demonstrating there are no genuine issues of material fact.  *Gibson v. Geithner*, 776 F.3d 536, 539 (8th Cir. 2015).  Courts must view "'the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record.'"  *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)).

State substantive law controls state law claims before federal courts sitting in diversity.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010).  Iowa law thus governs the substantive matters in this case.

## III.  ANALYSIS

### A.  *Principles of Lease Interpretation*

Ordinary contract principles apply to the interpretation of leases.  *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001).  The ultimate goal of lease interpretation is to ascertain the parties' intent at the time they executed the lease.  *Id.*  In determining intent, the Court interprets the lease as a whole and "it is assumed in the first instance that no part of it is superfluous."  *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 77 (Iowa 2011) (internal quotation marks omitted).  "[A]n

interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Id.* (internal quotation marks omitted). "Contracting parties have wide latitude to fashion their own remedies for a breach of contract[.]" *Id.* Contractual limitations on remedies are generally enforced unless unconscionable. *Id.*

As the first step in interpreting a lease, the Court must determine as a matter of law whether the disputed term is ambiguous. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 439 (Iowa 2008). If the parties' intent is clear and unambiguous, the Court will enforce the lease as written. *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998). When no ambiguity exists, "contract interpretation and its legal effect are questions of law for the court." *Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 179 (Iowa 2010) (internal quotation marks omitted).

On the other hand, "[a] term is ambiguous if, after all pertinent rules of interpretation have been considered, a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Walsh*, 622 N.W.2d at 503 (internal quotation marks omitted). But "[a] term is not ambiguous merely because the parties disagree about its meaning." *Id.* If the Court concludes a lease term is ambiguous, the Court must then choose from the possible meanings. *Id.*[5]

---

[5] Extrinsic evidence may be helpful in determining the meaning of ambiguous terms. *Walsh*, 622 N.W.2d at 503. But the parties here have not provided any extrinsic evidence bearing on the parties' intent except for an affidavit from Lawrence Kadish, dated September 9, 2015, asserting he did not intend for the Lease to relieve Tenant of liability. This affidavit is not useful in determining the parties' intent at the time the Lease was signed. *Cf. Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013) ("We consider the parties' intent at the time the policy was sold, not in hindsight.").

### B.  Section 26.01 Requires Partial Dismissal of Tenant's
### Breach of Contract and Declaratory Relief Claims

Tenant argues section 26.01 of the Lease unambiguously relieves Tenant of any liability for damages to the property.  Section 26.01 is found within an Article entitled "Exculpation" and provides:

> Tenant shall have no personal liability for the performance of the obligations of Tenant hereunder, and in the event of a default by Tenant in the performance of its obligations, the sole remedy of Landlord shall be to terminate this Lease.

[ECF No. 14-3 at 49].

The Court finds section 26.01 is unambiguous and relieves Tenant of liability for any default under the Lease.  Section 26.01 is plainly worded and is not susceptible of more than one interpretation.[6]  It clearly states the "*sole* remedy" "in the event of a default by Tenant" is termination of the Lease and "Tenant shall have no personal liability."  *Id.* (emphasis added).  Section 26.01 is prominently positioned in the Lease; it is one of only two sections under the Article captioned "Exculpation."  The second section in that Article governs Landlord's liability and similarly states, "Landlord shall have no personal liability . . . the sole remedy of Tenant shall be the right to off-set against rent due Landlord."  *Id.*  Thus, Article 26 offers reciprocal absolution from personal liability and substantially limits the remedies available to both parties.  This is a clear indication that the parties specifically bargained for these terms and intended them to mean what they say.  *Cf. Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009) ("Generally, the element

---

[6] Landlord's initial briefing does not assert section 26.01 is susceptible of more than one meaning.  Landlord instead argues section 26.01 has *no* meaning.  But superfluity does not equal ambiguity.  *Nationwide Agri-Bus. Ins. Co. v. Goodwin*, 782 N.W.2d 465, 472 (Iowa 2010) (stating party "misperceive[d] the legal principles governing the interpretation of ambiguous policy provisions" when party failed to provide an alternative interpretation based on the language of the provision).

of consideration ensures the promise sought to be enforced was bargained for and given in exchange for a reciprocal promise or an act.").  Contrary to Landlord's assertions, the plain reading of section 26.01 does not leave Tenant "free to breach any Lease provision with impunity and without recourse."  [ECF No. 16 at 2].  Section 26.01 authorizes a not-insignificant remedy: termination of the Lease.

The Court is not persuaded by Landlord's argument that corporations do not have personal liability and therefore "personal liability" in section 26.01 is ambiguous.[7]  [ECF No. 24 at 6–8]. Landlord asserts that the use of the phrase "personal liability" in reference to a corporation must mean that section 26.01 was meant to prevent Landlord from piercing Tenant's corporate veil and recovering against Tenant's shareholders.  [ECF No. 24 at 8].  The Court disagrees for several reasons.  First, as Tenant highlights, a corporation is a "person" under Iowa law.  Iowa Code § 4.1(20) ("Unless otherwise provided by law, 'person' means individual, corporation, limited liability company, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity."); Iowa Code § 490.14(24).[8]  It is therefore appropriate to refer to a corporation's liability as "personal."  Second, the Lease states, "Tenant shall have no personal liability"—not "Tenant's shareholders shall have no personal liability."  If the parties intended to prevent Landlord from piercing Tenant's corporate veil, they presumably would have explicitly stated as much.  Moreover, it is "[c]entral to corporate law," *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 809 (Iowa 1978), that "'[t]he legal fiction of the corporation . . . is intended to insulate stockholders from personal liability for corporate acts,'"

---

[7] Landlord first raised this argument at oral argument on October 23, 2015.

[8] The Iowa Code in effect at the time the Lease was executed states the same.  Iowa Code § 4.1(13) (1977); *id.* § 496A.2(1).

*Haupt v. Miller*, 514 N.W.2d 905, 909 (Iowa 1994), and there would have been no need for the parties to restate this fundamental principle of corporate law in the Lease.  The Court also finds it significant that section 26.01 and section 26.02 contain parallel exculpatory language, even though the signatory Landlord, Lawrence Kadish, is *not* a corporation.  Finally, Landlord has not cited, and the Court has not located, any case finding the phrase "personal liability" ambiguous because it referenced a corporation.  The Court is not swayed from its conclusion that section 26.01 is unambiguous on its face and relieves Tenant from liability for property damage.

Nor does any other term of the Lease render section 26.01 ambiguous.  Instead, reading the Lease as a whole bolsters the Court's finding that section 26.01 is unambiguous.  Article 5, which includes an express exception to section 26.01, is illuminating:

> The Tenant shall be entitled to collect and shall collect the rental to be paid by [K-Mart], subject to the following condition:
>
> > An amount of such rents received by Tenant each month equal to the monthly rental to be paid Landlord hereunder shall be received and held by Tenant in trust for the payment of the then current month's rent, and to the extent such funds are not so applied Tenant shall have full personal liability to Landlord, *the provisions of Section 26.01 of the Lease notwithstanding*.

[ECF No. 14-3 at 11 (emphasis added)].  Article 5 demonstrates that the parties were aware section 26.01 would generally apply and took care to draft around section 26.01's liability waiver when necessary.[9]

---

[9] Section 26.02 presents another example of an express exception to the general liability waiver, albeit the general liability waiver granted to Landlord. Section 26.02 states:

The Court disagrees with Landlord's assertion that section 26.01 "contradicts numerous provisions allowing Landlord to recover damages, including attorney's fees and expenses, arising from Tenant's defaults."   [ECF No. 16 at 7].   Though several sections of the Lease set forth Tenant's obligations under the Lease, these sections either do not provide a remedy or provide a specific remedy that serves as a limited exception to section 26.01.   *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) ("[W]hen a contract contains both general and specific provisions on a particular issue, the specific provisions are controlling."); *Mealey v. Kanealy*, 286 N.W. 500, 506 (Iowa 1939) (holding a provision "may not be disregarded as being repugnant to the purpose of the contract" but may instead "be interpreted as modifying and limiting an element of the earlier provision").   The Court addresses each of these "contradictory" provisions in turn:

---

Except as in this Section 26.02 provided, Landlord shall have no personal liability for the performance of the obligations of the Landlord hereunder, and in the event of a default by Landlord in the performance of its obligations, the sole remedy of Tenant shall be the right to off-set against rent due Landlord by Tenant of any sums expended by Tenant to cure any such Landlord defaults. The foregoing to the contrary notwithstanding, an amount of any funds received by Landlord each month (either from the Operating Tenant or Tenant) equal to the monthly amortization of any Qualified Mortgage shall be received and held by Landlord in trust for the payment of the then current monthly installments and, to the extent such funds are not so applied, Landlord shall have full personal liability to Tenant.

[ECF No. 14-3 at 49].

1. "Section 6.01 – The Landlord shall not be required to furnish any services or facilities or to make any repairs or alterations in or to the Building, throughout the term of this Lease, the Tenant hereby assuming the full and sole responsibility for the condition, renovation, operating, repair, replacement, maintenance and management of the [property]."  [ECF No. 14-3 at 12].

2. "Section 6.05 – The Tenant shall assume all of the obligations of the Landlord pursuant to [the Sublease] . . . ." *Id.* at 14.

3. "Section 6.06 – The Tenant will not do or permit or suffer any waste, damages, disfigurement or injury to or upon the [property] or any part thereof." *Id.*

These above-listed sections do not provide a remedy and thus do not contradict section 26.01.

4. "Section 8.01 – If . . . the Building or any part thereof shall be damaged or destroyed by fire or other casualty . . . of any kind or nature . . . the Tenant, at its sole cost and expense, and whether or not the insurance proceeds, if any, shall be sufficient for the purpose, shall . . . repair, alter, restore, replace or rebuild the same as nearly as possible to its value, condition and character immediately prior to such damage or destruction." *Id* at 23.

Section 8.01 applies to damage or destruction "by fire or other casualty" and is thus, by its plain language, inapplicable because the alleged damages in this case did not occur by those means. Nevertheless, the remedy provided by section 8.01 is limited and specific and does not negate section 26.01.

5.  "Section 6.12 – Upon the expiration of the term of this Lease or on the sooner termination thereof, the Tenant shall peaceably and quietly leave, surrender and yield up unto the Landlord [the property] broom-clean and free of occupants and shall repair all damage to the [property] caused by or resulting from the removal of any removable property of the Tenant or of the subtenants or assignees."  *Id* at 18. [10]  Section 6.12 further provides that any property left on Landlord's property will be deemed abandoned and may be sold by Landlord. If Landlord sells such abandoned property, "the Landlord may receive and retain the proceeds of such sale and apply the same, at its option, against the expenses of the sale, the cost of moving and storage, any arrears of rent or additional rent payable hereunder and any damages to which the Landlord may be entitled under Article 12 hereof or pursuant to law."  *Id.*

To the extent section 6.12 provides a remedy, it is limited and specific and does not negate section 26.01's general waiver of liability.

6.  Article 12 governs "Default Provisions."  *Id.* at 29.  Section 12.01 in that article details the grounds for default and the notice required for terminating the Lease. Section 12.01 states, however, that "Tenant shall remain liable for damages as hereinafter provided."  *Id.* at 32.  The ensuing provisions of article 12 empower Landlord to repossess the property and receive all rental income from the property.  *Id.* at 32–33.  Section 12.03 requires the Tenant, upon default, to "pay to the Landlord as damages" the rent[11] due Landlord.  *Id.*  Section 12.03 also states, "suits for the recovery of such damages . . . may be brought by the Landlord from time to time at its election."  *Id.* at 33.

No provision of Article 12 negates section 26.01 because Article 12 restricts damages to the rent due on the Lease.  This is a limited, specific remedy.  Moreover, Article 5 specifically exempts damages for misapplied rent from the general liability waiver of section 26.01.

Several sections of the Lease provide for indemnification:

---

[10] The Lease contains two paragraphs numbered "Section 6.12."  The above quotation is found in the first section 6.12 paragraph.

[11] Section 12.03 details how the rent due is calculated.

7. "Section 6.04 – The Tenant shall take good care of the [property], make all repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, foreseen and unforeseen, and shall maintain and keep the said [property] and the parking lots and driveways in firstclass order, repair and condition." *Id.* at 13. Section 6.04 requires the Tenant to "indemnify and hold the Landlord harmless of and from any and all claims or demands, upon or arising out of any accident, injury or damage to any person or property" that occur on the Landlord's property. *Id.*

8. "Section 6.08 – Unless the same shall result from the act or neglect of Landlord, the Landlord shall not be responsible or liable for any damage or injury to any property, fixtures, merchandise or decoration or to any person or persons at any time on the [property] from any cause whatsoever[.]" *Id.* at 15. Section 6.08 provides a specific remedy: "Tenant agrees that it will not hold the Landlord in any way responsible or liable therefor and will further indemnify and hold the Landlord harmless from and against any and all claims, liability, penalties, damages, expenses and judgments arising from injury to persons or property of any nature and also for any matter or thing growing out of the occupation of the [property]." *Id.* at 15–16.

9. "Section 6.12 – The Tenant will indemnify, protect and save harmless the Landlord from and against each and every claim, demand, fine, penalty, cause of action, liability, damage, judgment or loss, of whatsoever kind or nature, to which the Landlord may be subject or which the Landlord may sustain, including without limitation, reasonable attorneys' fees, costs and other expenses by the Landlord in defending against the same, resulting from any violation by the Tenant or any failure of the Tenant in the performance of any of the covenants or agreements contained in this Article 6 or in any other Article of this Lease or from any other matter or thing growing out of the Tenant's use and occupancy of the [property.]" *Id.* at 18–19.[12]

Landlord asserts these paragraphs create an obligation for Tenant to compensate Landlord for any damage to the property.

Indemnification commonly calls to mind a duty to reimburse another for a third-party claim. 41 Am. Jur. 2d *Indemnity* § 1. But parties may also "use the term 'indemnity' to include direct liability as well as third party liability." *Id.* Sections 6.04, 6.08, and 6.12 do not specify whether they relate only to third-party claims or to both third-party and direct claims. Whether

---

[12] This quotation is found in the second paragraph numbered section 6.12.

these indemnification sections refer only to third-party claims or also encompass direct claims is therefore a matter of interpretation. *Zalkind v. Ceradyne, Inc.*, 124 Cal. Rptr. 3d 105, 113–14 (Cal. Ct. App. 2011).

The Court reads sections 6.04, 6.08, and 6.12 in context with the rest of the Lease—most importantly, in context with section 26.01. The indemnifications in sections 6.04, 6.08, and 6.12 may be reconciled with section 26.01's general liability waiver only if they are read to apply solely to third-party claims. Under such a reading of "indemnify," sections 6.04, 6.08, and 6.12 serve as limited exceptions to section 26.01's general liability waiver and are not repugnant to section 26.01. The Court therefore concludes the parties' intent in sections 6.04, 6.08, and 6.12 was to invoke the ordinary meaning of "indemnify" and obligate Tenant to reimburse Landlord for third-party claims—not direct claims brought by Landlord.

Finally, the Court considers section 13.01. Article 13 is entitled "Right to Perform the Other Party's Obligation." [ECF No. 14-3 at 35]. Section 13.01 provides:

10. "If Tenant shall default in the observance or performance of any term or covenant on its part to be observed or performed under or by virtue of any of the terms or p[ro]visions in any Article of this Lease, Landlord, without being under any obligation to do so and without thereby waiving such default, may remedy such default for the account and at the expense of Tenant, immediately and without notice in case of emergency (in which event Landlord shall take only such action as may be necessary to meet the emergency), or in any other case only provided that Tenant shall fail to remedy such default with all reasonable dispatch after Landlord shall have notified Tenant in writing of such default. If Landlord makes any expenditures or incurs any obligation for the payment of money in connection therewith including, but not limited to, attorneys' fees in instituting, prosecuting or defending any action or proceeding, such sums paid or obligations incurred with interest thereon at maximum legal rate and costs shall be deemed to be additional rent hereunder and shall be paid to it by Tenant." *Id.*

This section must be read in tandem with section 4.06. Section 4.06 states:

> All additional rents . . . shall constitute rent payable under this Lease with the same effect as if the same were the net rent reserved herein; and in the event of nonpayment by the Tenant of such additional rent or other payments, when due, according to the terms of this Lease, the Landlord shall have the same rights and remedies in respect thereof as the Landlord shall or may have in respect to the net rent herein reserved.

*Id.* at 10.

In sum, if a Landlord expends funds pursuant to section 13.01's grant of authority, those funds are treated as "additional rent" and, per section 4.06, "additional rent" is treated no different than "rent." As previously discussed, Article 12 governs default and states Tenant remains liable after the termination of the Lease for rent due Landlord. *Id.* at 32–33. Section 12.03(a)(i) specifically allows Landlord to collect as damages the sum of "the aggregate rent and additional rent." *Id.* at 32. Thus, if 1) Tenant defaulted; 2) Landlord gave Tenant written notice of the default; 3) Tenant failed to remedy the default with all reasonable dispatch; *and* 4) Landlord expended its own funds to remedy the default, then Landlord is entitled to recoup those funds as "additional rent"—and Tenant remains liable despite termination of the Lease.

The trouble here is that Landlord did not follow the procedures of section 13.01. Section 13.01 authorizes Landlord to *remedy* a default and collect its expended funds via *rent*—but only after providing Tenant *opportunity to remedy* the default itself. Here, Landlord did not demand in writing that Tenant remedy its default; Landlord instead demanded liquidated damages. Neither party asserts Tenant could have remedied its defaults through any sort of specific performance. Thus, there was no opportunity for Tenant to remedy its defaults as contemplated by section 13.01. Further, Landlord did not itself remedy the bulk of the defaults it alleges, which is the only action section 13.01 authorizes Landlord to take. To the contrary, Landlord sold the property without remedying the defaults (with the exception of buying the encroachment area) and the only remedy now available to Landlord is liquidated damages. But liquidated damages are not what section

-15-

13.01 authorizes; it authorizes only the payment of additional rent.  Because Landlord did not satisfy the preconditions of section 13.01, Landlord cannot now claim the remedy section 13.01 provides.

Having reviewed each of the provisions of the Lease that provide exceptions to section 26.01's general liability waiver, the Court finds none of these provisions apply to the facts of this case.  The Court therefore finds that section 26.01 governs this case.  Landlord exercised its "sole remedy" under section 26.01 when it terminated the Lease.  Tenant is now relieved from liability for subsequent damages.  Any other conclusion would effectively write section 26.01 out of the Lease—rendering it superfluous and "'reconstruct[ing] the contract contrary to the intent of the parties.'"  *Wolfe*, 795 N.W.2d at 77 (recognizing "deny[ing] full effect to such express contractual provisions is ordinarily impermissible").  The Court declines to do so.

Landlord's Breach of Contract and Declaratory Relief claims are hereby dismissed to the extent they seek the cost of damages to the property and the cost of acquiring the rights to the encroachment area.  Dismissal is necessary because Landlord cannot prove, as a matter of law, any entitlement to damages.  *See Berryhill v. Hatt*, 428 N.W.2d 647, 652 (Iowa 1988) (recognizing damage is an element of a breach of contract claim); *cf. Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 920 (8th Cir. 2013) (affirming district court's grant of summary judgment on breach of contract claim because plaintiff did not allege damages).  But Tenant has not carried its burden to prove that the Lease precludes damages for November 2012 rent.[13]  The Court retains jurisdiction over Landlord's Breach of Contract and Declaratory Relief claims for November 2012 rent.  *See Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822–23 (8th Cir. 2011) ("Neither the existence

---

[13] In their summary judgment filings, neither party addressed the Lease's applicability to Landlord's claim for November 2012 rent.

of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction.").

### C.  Section 26.01 Requires Dismissal of Landlord's Waste Claim

Tenant's Motion asks generally that all Landlord's claims be dismissed, and neither the Motion, [ECF No.14], nor the supporting brief, [ECF No. 14-1], addresses Landlord's claims individually.  Landlord argues in its resistance, "even if this Court found that Section 26.01 was not ambiguous or repugnant to the Lease, [Landlord's] waste claim regarding [Tenant's] damages to the Leased Premises survives and remains pending due to [Tenant's] willful neglect and damages to the Premises."  [ECF No. 16 at 19].

Iowa Code § 658.1A codifies the common-law tort of waste.  It provides:

> If a guardian, tenant for life or years, joint tenant, or tenant in common of real property commit waste thereon, that person is liable to pay three times the damages which have resulted from such waste, to the person who is entitled to sue therefor.

Iowa Code § 658.1A; *see also Hamilton v. Mercantile Bank of Cedar Rapids*, 621 N.W.2d 401, 409 (Iowa 2001) ("A claim for waste is an action at law brought by a remainderman against a tenant in lawful possession of land—usually a life tenant or tenant for a term of years—who is allegedly using the land in such a way as to diminish its value.").

It is a fundamental principle of contract law that parties may "specify the terms and conditions of liability, even though, without the contract, recovery might be had."  *Roeh v. Bus. Men's Protective Ass'n of Des Moines*, 145 N.W. 479, 482 (Iowa 1914); *see, e.g., McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 575 (Iowa 2002) (noting "contract law can alter the common law concepts of indemnification, and impose obligations not otherwise supported by . . . noncontractual indemnification"); *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 780 (Iowa 2000) (recognizing insurance company may validly shorten limitations

period for bringing underinsured motorist claim); *Riggs v. Meka*, 17 N.W.2d 101, 103 (Iowa 1945)

(stating "a tenant may bar himself from the protection of [a statute] by waiver, estoppel, or

agreement"); *Griswold v. Illinois Cent. R. Co.*, 57 N.W. 843, 844 (Iowa 1894) (refusing to reform

contract because it was contrary to statute; commenting, "'You must stand by your contract.'");

17A C.J.S. *Contracts* § 275 ("Generally, a person may lawfully waive by agreement the benefit of

a statutory or constitutional provision." (footnote omitted)).  As is summarized in one treatise:

> Where the parties to a lease have limited their remedies under the lease, the
> agreement will control in the event of a breach.  If a lease contract specifically
> provides for only one remedy and denominates that this is the only remedy, the
> lessor is bound by the exclusive remedy set out in the contract in the event of a
> breach by the lessee.

49 Am. Jur. 2d *Landlord and Tenant* § 74 (2015) (footnote omitted); *see also In re Goldblatt Bros.,

Inc.*, 66 B.R. 337, 346 (Bankr. N.D. Ill. 1986) ("State law regarding losses upon breach of a lease

is irrelevant. State law is applicable only when the lease or other contractual arrangement between

the landlord and tenant does not itemize the damages the landlord is entitled to recover."); *cf.* 78

Am. Jur. 2d *Waste* § 9 (2015) ("Ordinarily, acts that would otherwise constitute waste may be

authorized by the person whose estate or interest is affected by the acts, absolving the tenant from

liability for the acts.").

   The Court finds Landlord and Tenant have validly contracted around Iowa Code § 658.1A.

The parties have not cited, nor has this Court found, any case forbidding parties from doing so.

Landlord and Tenant specifically addressed Tenant's duty regarding waste in section 6.06: "The

Tenant will not do or permit or suffer any waste, damages, disfigurement or injury to or upon the

[property]."  [ECF No. 14-3 at 14].  But section 6.06 does not state a remedy and is thus governed

by section 26.01's general liability waiver.[14]  Reading the Lease as a whole, the Court finds Landlord bargained away its right to pursue any action for waste by granting Tenant "no personal liability for the performance of [its] obligations."  *Id.* at 49.  By specifically addressing Tenant's duty to avoid waste and declining to provide any remedy for breach of that duty, the parties exercised their freedom to contract in derogation of the statutory and common-law imposition of liability.  *See Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 753 (Tex. App. 2000) (holding no common law waste claim could be maintained where parties' duties governed by contract); *cf. DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999) ("A person who enters a neighbor's property and cuts down trees with no contractual right to do so can be held liable in tort. But when, as here, a contract spells out the parties' respective rights about whether trees may be cut, the contract and not common-law negligence governs any dispute about whether trees could be cut or how trees were cut.").  The Court thus concludes Landlord's Waste claim, be it common-law or statutory, is barred by section 26.01.  Dismissal is necessary because Landlord again cannot prove, as a matter of law, any entitlement to damages.

---

[14] Had Landlord complied with the procedures of section 13.01, Landlord's entitlement to compensation for waste damages would presumably be governed by that provision.

## IV.  CONCLUSION

For the foregoing reasons, Defendants Abrams Properties, Inc. and SCIenergy, Inc.'s Motion for Summary Judgment, [ECF No. 14], is GRANTED in part.  Plaintiff Davenport Chester, LLC's Breach of Contract and Declaratory Relief claims are DISMISSED to the extent Plaintiff seeks the cost of damages to the property and the cost of acquiring the rights to the encroachment area.  Plaintiff's Breach of Contract and Declaratory Relief claims remain to the extent they involve November 2012 rent.  Plaintiff's Waste claim is DISMISSED.

IT IS SO ORDERED.

Dated this 23rd day of December, 2015.

STEPHANIE M. ROSE
UNITED STATES DISTRICT JUDGE